**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Joseph J. DePalma
Catherine B. Derenze
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
cderenze@litedepalma.com

[Additional Attorneys on Signature Page]

*Attorney for Plaintiff and the Proposed Class and Subclass*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| T.G., on behalf of herself and all others similarly situated, | : | Civil Action No.: |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| vs. | : | **CLASS ACTION** |
| | : | **DEMAND FOR JURY TRIAL** |
| SUMMIT HEALTH MANAGEMENT LLC; META PLATFORMS, INC.; GOOGLE LLC; PUBMATIC, INC.; MICROSOFT CORPORATION; AND MAGNITE, INC., | : | |
| | : | |
| *Defendants*. | : | |

Plaintiff T.G. ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following Class Action Complaint (the "Action") against the above-captioned Defendants, SUMMIT HEALTH MANAGEMENT LLC ("CityMD"), META PLATFORMS, INC ("Meta")., GOOGLE LLC ("Google"), PUBMATIC, INC. ("PubMatic"), MICROSOFT CORPORATION ("Microsoft"), and MAGNITE, INC.("Magnite") upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of her counsel as follows:

## I.      INTRODUCTION

"*When you browse [the CityMD] website, you do so anonymously ... We do not collect personal information for the purpose of reselling or distributing that information*."

- CityMD Privacy Policy

1.      Summit Health Management controls and/or operates over 400 urgent care and other medical clinics as well as telemedicine services throughout the New York City metropolitan area, parts of upstate New York and Long Island, Pennsylvania, New Jersey, and parts of Oregon that operate under the "CityMD" tradename.

2.      In the course of doing business to provide medical services, CityMD collects a substantial amount of personally identifiable information ("PII") and protected health information ("PHI") under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") through the CityMD website, CityMD.com.  This PII and PHI may include but is not limited to name and other identifying information (device identifiers, internet protocol address, etc.) in combination with searches related to medical conditions and other private medical information (like medication, symptoms, and treatment options).  This information is collected through snippets of code that are specifically designed to collect such information. These snippets of code are called "cookies." Here, these snippets of code detect and collect PII and PHI that are input by potential patients.  The information collected by the code depends on the interactions that the particular person has with the CityMD website.

3.      CityMD has a deep trove of informational medical articles that are posted "for free" on the CityMD website.  However, the cost that consumers pay for access to this medical information with the unwilling and unwitting collection of their precious PII and PHI.  For example, when Plaintiff T.G. was ill – she searched "Covid" in the search tab on the top of the CityMD website.  While this search generated relevant articles for Plaintiff to review, it also did

something far more nefarious: it combined her identifying information with the fact that she was searching for specific care related to the Novel Coronavirus of 2019 ("Covid-19"). Then it packaged this information and sold it to advertisers who place their snippets of code on CityMD's website so that Plaintiff would then potentially be served with advertisements around the internet related to Covid-19 treatments and other related goods and/or services.

4.    However, rather than protect the sensitivity of this highly valuable PII and PHI, CityMD instead opts to monetize it and sell it to third party advertisers who intercept Plaintiff and Class members' information when they use the CityMD website. When a user initially accesses the CityMD website, their information is intercepted by third party advertisers including Facebook (d/b/a Meta), Google, PubMatic, Microsoft, and Magnite (collectively, the "Advertising Defendants"). The way that this is done is by CityMD placing Advertising Defendants' different types of code onto the CityMD website with the intention of collecting the data that users input into the website in combination with their identifying information. This runs contrary to state and federal law, to commonly accepted practices with respect to the sanctity of PHI, and to Defendant CityMD's privacy policy which expressly disclaims that such conduct takes place.

5.    Logically, CityMD knew or should have known that by embedding the Advertising Defendants' code, they were disclosing and permitting those Advertising Defendants to intercept and collect information shared by its website users, including the PII and PHI of Plaintiff and Class members. This is because the code used in this scenario needed to be affirmatively and intentionally placed on the CityMD website in order to be used in the way as described herein. The code's entire purpose is to monetize data, and there can be no doubt that the code on CityMD's website collects PII and PHI. By opting to repackage this data and sell it, CityMD, CityMD violates the rights that are afforded to patients under HIPAA, as this information is protected by

HIPAA and, as a healthcare provider, CityMD was required to protect it.  Additionally, by being in receipt of ill-gotten private data, especially valuable PII in combination with PHI, the Advertising Defendants each served as a conduit to monetize this precious and private information.

6.      In fact, in December 2022, the United States Department of Health and Human Services ("HHS") issued a revised bulletin "to highlight the obligations" of healthcare providers under the HIPAA Privacy Rule "when using online tracking technologies" such as those used by CityMD which "collect and analyze information about how internet users are interacting with a regulated entity's website or mobile application."

7.      In the bulletin, HHS confirmed that HIPAA applies to both healthcare providers' use of tracking technologies like those developed by the Advertising Defendants and used by CityMD on citymd.com.  Among other things, HHS explained that healthcare providers violate HIPAA when they use tracking technologies that disclose an individual's identifying information, even if no treatment information is included and even if the individual does not have a relationship with the healthcare provider:

> How do the HIPAA Rules apply to regulated entities' use of tracking technologies?
>
> Regulated entities disclose a variety of information to tracking technology vendors through tracking technologies placed on a regulated entity's website or mobile app, including individually identifiable health information (IIHI) that the individual provides when they use regulated entities' websites or mobile apps. This information might include an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, medical device IDs, or any unique identifying code. **All such IIHI collected on a regulated entity's website or mobile app generally is PHI, even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services**. This is because, when a regulated entity collects the individual's IIHI through its website or mobile app, the information connects the individual to the regulated entity (*i.e.*, it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for care.

8.      Additionally, HHS further clarified that HIPAA applies to healthcare providers with tracking technologies even on webpages and on mobile applications that do not require patients to login.  This HHS bulletin did not create any new obligations, but instead highlights obligations that have been in place for decades, with which CityMD should have been complying.

9.      And, while the Privacy Policy acknowledges the use of "Cookies" on its website, it: (1) does not explain the PII and PHI that is intercepted by the Advertising Defendants, (2) fails to disclose to whom or how that information is to be used, what retention and deletion schedules are, and how the PII and PHI will be protected, (3) forces consumers to opt-out through a cumbersome process if they wish that their PII and PHI were to be tracked as opposed to an opt-in process, and (4) refuses to allow full access to the CityMD website, including the sections of the CityMD website which require a login and password for entry.  At no point does the Privacy Policy make clear that such an extensive amount of PII and PHI are sold.

10.     Plaintiff did not consent to the use of tracking technology when using the CityMD website, much less the use of their PII and PHI for advertising purposes by the Advertising Defendants.

11.     Against this backdrop, Plaintiff, on behalf of herself and all others similarly situated, brings this action, seeking actual damages, punitive damages, restitution, statutory damages, injunctive relief, and a declaratory judgment, as well as any other relief this Court deems just and proper, for Defendants' conduct.

## II.      JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  The amount in controversy exceeds the sum of $5,000,000 exclusive of interests and costs, there are well over 100 putative Class members, and

minimal diversity exists because one or more putative Class members are citizens of a different state than at least one Defendant (namely, Plaintiff is a New York resident and Defendant CityMD is domiciled in New Jersey).

13.     This Court has personal jurisdiction over Defendants because Defendant Summit Health Management LLC is located in the state of New Jersey – specifically, in this District. Additionally, this Court has personal jurisdiction over the Defendants because intentionally availed themselves of this jurisdiction by choosing to do business in New Jersey.  Defendant CityMD has 44 locations in New Jersey, and the Advertising Defendants knew or should have known that their tracking technologies were being used to intercept the actions of Plaintiff and Class members on the CityMD website.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant Summit Health Management LLC is located in this District, the Defendants conduct business in this District and a substantial part of the events, acts and omissions giving rise to Plaintiff's claims occurred in this District.

## III.   PARTIES

### Plaintiff T.G.

15.     Plaintiff is a resident and citizen of the State of New York, residing in Suffolk County.  From approximately 2020 through 2024, Plaintiff used CityMD's website to look up medical information, and, therefore, provided CityMD with her PII and PHI (as defined *Supra*, at 2).

16.     Had Plaintiff known that CityMD was surreptitiously collecting her PII and PHI, she would not have used the CityMD website.  Plaintiff did not consent to her data being used by

CityMD for any purposes other than medical purposes – and Plaintiff certainly did not consent to her data being used by CityMD in the manner as described herein.

### Defendant Summit Health Management LLC

17.    Defendant Summit Health Management LLC is a limited liability company with its principal place of business located in New Jersey.

### Defendant Meta Platforms, Inc.

18.    Defendant Meta Platforms, Inc. is a corporation with its principal place of business located in Menlo Park, California.

### Defendant Google LLC

19.    Defendant Google LLC is a limited liability company with its principal place of business in Mountain View, California.

### Defendant PubMatic, Inc.

20.    Defendant PubMatic, Inc. is a corporation with its principal place of business located in Redwood City, California.

### Defendant Microsoft Corporation

21.    Defendant Microsoft Corporation is a corporation with its principal place of business located in Redwood, Washington.

### Defendant Magnite Inc.

22.    Defendant Magnite Inc. is a corporation with its principal place of business located in Los Angeles, California.

## IV.    FACTUAL ALLEGATIONS

### *CityMD's Business*

23.    Defendant CityMD is a New Jersey-based healthcare company founded in 2010 that has hundreds of urgent care centers in New York, Pennsylvania, New Jersey, and Oregon. CityMD runs a website (citymd.com) which allows potential patients to book appointments, research medical information, and check pertinent updates from doctors in connection with services at CityMD's brick-and-mortar locations.

24.     In the course of doing business to provide medical services, CityMD collects a substantial amount of PII and PHI through the CityMD website.  This PII and PHI includes, but is not limited to: name and other identifying information as well as medical information.  This information is collected as described above – CityMD allows the Advertising Defendants' code to lurk on their website in exchange for the monetization of the data that is intercepted by that code. This information is initially furnished to CityMD (and then nefariously and secretly shared with the Advertising Defendants) in two forms: as PII and as PHI.  PII is collected by the CityMD website in two ways: *first,* in a front-facing, more obvious way -- which is when the patient inputs their information into the CityMD website; and, *second*, in the background, other information is collected by the CityMD website – which is when the website collects information about the device that the patient is using that can then be used to track that person around the internet.  For example, Advertising Defendant Google's Google Analytics technology, which is the advertisement placement technology they use to make such interceptions of PII and PHI, tracks the user around the internet in order to serve them advertisements in various places.

25.    Essentially, companies bid for packages of consumers for whom to target with their advertisements.  In order to do this, Google (and other advertisement services companies) need the

requisite data to be able to sell to the companies that need it in order to target a certain subset of consumers.  This can only be done when Google has both PII (to identify that a particular internet user is in fact in the subset of consumers desired by a particular company to target) and additional information (to identify the particular products and services that might be of interest to that particular internet user).

26.    Additionally, when potential patients search for information on CityMD's website, they also give over substantial PHI including medical conditions, medications, and other relevant medical information.  CityMD's website has a "search bar" allowing potential patients to search for phrases and topics that CityMD might either have articles about or specialists who treat specific searchable conditions.

27.    This can be seen below:



28.     So, for example, if a potential patient wanted to search for a particular phrase or topic, that phrase or topic, such as "migraines," would be entered as so:



29.     Then, CityMD's website would collect that information and present the website user with various options that are specific to the field requested in the search bar, including articles about migraines, possible neurologist referrals within the CityMD network, medications and/or homeopathic remedies that treat migraines, and other information related to migraines, generally.

30.     This information entered into CityMD's website is highly personal – and it is considered to be PHI protected by HIPAA.  As previously stated, in December 2022, HHS issued a bulletin "to highlight the obligations" of healthcare providers under the HIPAA Privacy Rule "when using online tracking technologies" such as those used by CityMD which "collect and analyze information about how internet users are interacting with a regulated entity's website or mobile application."

31.     In the bulletin, HHS confirmed that HIPAA applies to both healthcare providers'
use of tracking technologies like those developed by the Advertising Defendants and used by
CityMD on citymd.com.  Among other things, HHS explained that healthcare providers violate
HIPAA when they use tracking technologies that disclose an individual's identifying information,
even if no treatment information is included and even if the individual does not have a relationship
with the healthcare provider:

> How do the HIPAA Rules apply to regulated entities' use of tracking technologies?
>
> Regulated entities disclose a variety of information to tracking technology vendors
> through tracking technologies placed on a regulated entity's website or mobile app,
> including individually identifiable health information (IIHI) that the individual
> provides when they use regulated entities' websites or mobile apps. This
> information might include an individual's medical record number, home or email
> address, or dates of appointments, as well as an individual's IP address or
> geographic location, medical device IDs, or any unique identifying code. **All such
> IIHI collected on a regulated entity's website or mobile app generally is PHI,
> even if the individual does not have an existing relationship with the regulated
> entity and even if the IIHI, such as IP address or geographic location, does not
> include specific treatment or billing information like dates and types of health
> care services**. This is because, when a regulated entity collects the individual's IIHI
> through its website or mobile app, the information connects the individual to the
> regulated entity (*i.e.*, it is indicative that the individual has received or will receive
> health care services or benefits from the covered entity), and thus relates to the
> individual's past, present, or future health or health care or payment for care.

32.     Additionally, HHS further clarified that HIPAA applies to healthcare providers
with tracking technologies even on webpages and on mobile applications that do not require
patients to login.

### *CityMD's Privacy Policy*

33.     On CityMD's website, it contains a Privacy Policy that explains the rights and
obligations that CityMD must abide by.  At the very top of the Privacy Policy, it states the
following:

**Privacy policy.**

CityMD respects your privacy and is committed to protecting the personal information that you share with us. Generally, you may browse through our website without providing any information about yourself. When we require personal information to provide services or when you choose to provide us with your personal information, this policy describes how we collect and use your personal information.

34.     CityMD then goes on to state:

When you browse our website, you do so anonymously, unless you have previously indicated that you wish CityMD to remember your login and password or you submit a registration form. We do not collect personal information for the purpose of reselling or distributing that information.

35.     These assurances are not only critical for consumers to be able to decide whether to use CityMD's website, but constitute a binding contract when consumers use the CityMD website.   The CityMD Privacy Policy goes on to elaborate regarding cookies and tracking technology as follows:

**Cookies and tracking technology.**

A cookie is a small data file that certain Web sites write to your hard drive when you visit them. A cookie file can contain information such as a user ID that the site uses to track the pages you've visited, but the only personal information a cookie can contain is information you supply yourself. A cookie can't read data off your hard disk or read cookie files created by other sites. Some parts of CityMD's website use cookies to understand user traffic patterns. We do this in order to determine the usefulness of our website information to our users and to see how effective our navigational structure is in helping users reach that information.

If you prefer not to receive cookies while browsing our website, you can set your browser to warn you before accepting cookies and refuse the cookie when your browser alerts you to its presence. You can also refuse all cookies by turning them off in your browser, although you may not be able to take full advantage of CityMD's website if you do so. You do not need to have cookies turned on to use/navigate through many parts of our website, except access to certain of CityMD's web pages require a login and password.

36.     This portion of the CityMD Privacy Policy is critical, because it makes the following conclusions: (1) that the cookies and tracking technology is simply to "determine the

usefulness of… website information and to see how effective our navigational structure is in helping users reach that information"; (2) that consumers cannot access the totality of the website without interacting with cookies and tracking technology; and (3) that the onus is on the consumer to use cookie and tracking technology protection if they are uncomfortable with CityMD's website's use of cookie and tracking technology.

37.    There are several inherent problems with these conclusions.

38.    *First*, the cookies and tracking technology are not merely to determine the "usefulness" of website information.  The cookies and tracking technology, such as Facebook Pixel and Google Analytics, for example, installed on CityMD.com are meant not to analyze the efficacy of CityMD to disseminate medical information to consumers – they are meant instead to monetize this data and sell it for advertising purposes.

39.    *Next*, CityMD claims that you cannot "take full advantage" of CityMD's website without subjecting to cookies and tracking technology.  This means that people seeking medical treatment are unable to maintain any semblance of privacy when they seek help.  Not only is this pervasively intrusive, but violative of HIPAA's Privacy Rule.

40.    *Finally,* the only recourse of consumers should not be to assume that they have no privacy interests when they use a medical provider's website but rather to be able to trust that that provider abides by common notions of decency and respect while abiding by state and federal laws put into place for this very purpose.

41.    Critical too is a key omission in CityMD's Privacy Policy:  CityMD does not disclose any of the third parties surreptitiously intercepting Plaintiff and Class members' data while they attempt to navigate the CityMD website.  This means that consumers have no idea who

has access to their PII or PHI without proprietary tools that can discern if and which tracking technologies might exist on a given website.

### *Defendants' Surreptitiously Collect PII and PHI from CityMD's Website*

42.    However, rather than keep this information confidential – between the user and the website – CityMD nefariously allows for the use of code on its website to track these behaviors and sell them for the purposes of advertisement placement.

43.    Each of the Advertising Defendants have tracking technology as follows:

a.    **Meta.**  Meta's Facebook Pixel is a snippet of code that sends data back to Facebook about people who visit a particular website and allows the site operator to target them later with ads on Facebook's various social media websites and applications. According to a Facebook spokesperson, a user does not have to be "simultaneously logged into Facebook and viewing a third-party website for [Facebook Pixel] to function."  Common actions that can be tracked via Facebook Pixel includes viewing a certain page, adding in information, or making purchases.  CityMD.com affirmatively uses Facebook Pixel.

b.    **Google.**  Google' Google Analytics is also a snippet of code that uses "remarketing audiences" features that enable user tracking for targeting advertising across the entirety of the internet.  This feature allows a website (like CityMD.com) to build custom audiences based on how a user interacts with the website, following those users across the internet to target them with advertising on other websites. According to a Google spokesperson, site operators are supposed to inform visitors when data collected with this feature is used to connect this browsing data with someone's real world identity.  CityMD.com affirmatively uses Google Analytics

and it's "remarketing audiences" tool, allowing Google to track the respective CityMD.com user across the internet. CityMD sends information to the following domains from the CityMD.com website: doubleclick.net, google-analytics.com, google.com and googletagmanager.com.

c. **PubMatic.** PubMatic is a portal site for operators to offer space on their own websites for sale to advertisers. PubMatic uses code to do this and to run an "identity hub" whereby PubMatic can help advertisers use the data they have acquired form a third party to target ads to the specific interest of a specific person visiting a website. CityMD.com affirmatively uses PubMatic to send information to third parties, including to the domain pubmatic.com.

d. **Microsoft.** Microsoft uses code to send user data back to Microsoft, including to the domain bing.com. Once this information from CityMD.com is sent to "Bing," Bing runs internal searches to place advertisements specific to consumers on its own search engine. Additionally, Microsoft uses its Microsoft Audience Network on CityMD.com in order to use data collected on specific people to target advertisements. CityMD.com affirmatively uses Microsoft code and the Microsoft Audience Network on its website.

44. The collection of PII and PHI by CityMD.com and then the interception of that data by the Advertising Defendants is motivated by a single purpose: financial gain. The PII and PHI that CityMD disclosed and intercepted by the Advertising Defendants is extremely valuable. According to Experian, health data is a "gold mine" for healthcare companies and clinicians. Indeed, companies like Pfizer spend over $12 million annually just to acquire health data to be used for business purposes.

### ***Plaintiff and Class Members Do Not Consent to Defendants' Conduct***

45.     Plaintiff and Class members had no way of knowing that CityMD was disclosing, and that the Advertising Defendants were intercepting, their communications when interacting with the CityMD website, because Advertising Defendants' software and code was inconspicuously incorporated in the background.

46.     This conduct is all the more egregious given the nature of the information entered into the CityMD website – highly private medical information, like personal data related to conditions, medication, and appointments with medical professionals. Plaintiff and Class members would not expect this information to be disclosed or intercepted without their consent.

47.     This is especially so when taking CityMD's Privacy Policy into consideration, which falsely and disingenuously disclaims any desire of CityMD to profit off of consumer data.

48.     Accordingly, Plaintiff and Class members did not consent to Defendants' conduct.

### ***Plaintiff and Class Members Have a Reasonable Expectation of Privacy In Their PII and PHI***

49.     Plaintiff and Class members have a reasonable expectation of privacy in their communications on the CityMD website, including communications that contain PII and PHI.

50.     Users highly value their privacy when online – privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.  For example, *Consumer Reports* notes that 92% of Americans believe that internet companies and websites should be required to obtain affirmative consent before selling or sharing their data.

51.     Users also act consistently with this belief.  For example, following the roll out of Apple's new iPhone operating software which asks users for clear, affirmative consent before

allowing companies to track users, statistics quickly showed that 94% of Americans chose not to share data when prompted.

### *Plaintiff and Class Members' Harm*

52.     Plaintiff and Class members were harmed when their privacy rights were invaded by the Defendants.  Plaintiff would not have used the CityMD.com website had she known that her privacy rights would be afflicted as a result.

53.     Additionally, there is a market for health data like the data disclosed to CityMD on its website.  Plaintiff and Class members have pecuniary losses when their data is sold and resold to third parties by entities like CityMD because of the value of the data itself.  Without the freedom to control what becomes of their data, CityMD.com users are unable to maintain the value of their personal data and use it for whatever purposes they please (or for no purpose other than for health treatment, if they so choose).

54.     PII and PHI is extremely valuable.  Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences.  Even this obvious risk to reward analysis illustrates that PII and PHI has considerable market value.  Furthermore, the value of PII and PHI as a commodity is measurable.  As stated in "Exploring the Economics of Personal Data," "[f]irms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."  It is so valuable to identity thieves that once PII and PHI has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

### V.     CLASS ALLEGATIONS

55.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23

individually and on behalf of the following Class:

**Nationwide Class:** All natural persons in the United States who used the CityMD.com website and whose communications and/or data were shared with third parties, including the Advertising Defendants.

56.     In addition, or in the alternative, Plaintiff pleads the following State Class:

**New York Class:** All natural persons in the State of New York who used the CityMD.com website and whose communications and/or data were shared with third parties, including the Advertising Defendants.

57.     Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) the Defendants, Defendants' subsidiaries, affiliates, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendants' counsel.

58.     **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of millions of individuals, and the members can be identified through CityMD's records.

59.     **Predominant Common Questions:** The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

   a.   Whether Defendants violated Plaintiff's and Class members' privacy rights;

   b.   Whether Defendants were unjustly enriched;

   c.   Whether Defendants' acts and practices violated state consumer protection laws;

   d.   Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief, restitution, and disgorgement; and,

e.   Whether Plaintiff and the Class are entitled to actual, statutory, punitive and/or other forms of damages, and other monetary relief.

60.   **Typicality:** Plaintiff's claims are typical of the claims of the other members of the claims of Plaintiff and the members of the Class arise from the same conduct by Defendants and are based on the same legal theories.

61.   **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class.   Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including litigations to remedy privacy violations.   Plaintiff has no interest that is antagonistic to the interests of the Class, and Defendant has no defenses unique to any Plaintiff.   Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.   Neither Plaintiff nor their counsel have any interest adverse to the interests of the other members of the Class.

62.   This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.   This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.   Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

63.   Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## VI.     CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Violation of Common Law Invasion of Privacy**

**(On behalf of Plaintiff and the New York Class)**

**(Against All Defendants)**

64.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

65.     A plaintiff asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff has a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

66.     CityMD disclosure of Plaintiff's and Class members' sensitive data, including PII, health information, prescription requests and other interactions on the CityMD website, to third parties like the Advertising Defendants constitutes an intentional intrusion upon Plaintiff's and Class members' solitude or seclusion.

67.     Plaintiff and Class members had a reasonable expectation of privacy in the health information and other personal data that CityMD disclosed to third parties. Plaintiff's health information, prescription requests, and other interactions with the CityMD website are inherently sensitive in nature. Plaintiff and Class members reasonably expected this information would remain private and confidential and would not be disclosed to third parties without their consent.

68.     This expectation is especially heightened given CityMD consistent representations to users that this information would be safeguarded and not disclosed to third parties.

69.     Plaintiff and Class members did not consent to, authorize, or know about CityMD's intrusion at the time it occurred. Accordingly, Plaintiff and Class members never agreed that CityMD could disclose their data to third parties.

70.     The surreptitious disclosure of sensitive data, including PII and health information from millions of individuals was highly offensive because it violated expectations of privacy that have been established by social norms.  Privacy polls and studies show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is collected or shared.

71.     The offensiveness of this conduct is all the more apparent because CityMD's disclosure of this information was conducted in secret in a manner that Plaintiff and Class members would be unable to detect, contrary to the actual representations made by CityMD.

72.     As a result of CityMD actions, Plaintiff and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

73.     Plaintiff and Class members have been damaged as a direct and proximate result of CityMD's invasion of their privacy and are entitled to just compensation, including monetary damages.

74.     Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests as well as a disgorgement of profits made by CityMD as a result of its intrusions upon Plaintiff's and Class members' privacy.

75.     Plaintiff and Class members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of CityMD actions, directed at injuring Plaintiff and

Class members in conscious disregard of their rights.  Such damages are needed to deter Defendants from engaging in such conduct in the future.

76.     Plaintiff also seeks such other relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION

**Violation of Common Law Invasion of Privacy**

**(On behalf of Plaintiff and the New York Class)**

**(Against the Advertising Defendants)**

77.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

78.     Plaintiff asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which Plaintiff have a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

79.     Advertising Defendants' surreptitious interception, storage, and use of Plaintiff's and Class members' interactions and communications with the CityMD website, including PII, health information, and prescription requests, constitutes an intentional intrusion upon Plaintiff's and Class members' solitude or seclusion.

80.     Plaintiff and Class members expected this information to remain private and confidential given the nature of the CityMD website, which is primarily used to receive medical advice, treatment, prescriptions, and prescription coupons.

81.     This expectation is especially heightened given CityMD's consistent representations that this data would remain confidential.  Plaintiff and Class members did not

expect third parties, and specifically Advertising Defendants, to secretly intercept this information and their communications.

82.     Plaintiff and Class members did not consent to, authorize, or know about Advertising Defendants' intrusion at the time it occurred.  Plaintiff and Class members never agreed that Advertising Defendants could intercept, store, and use this data.

83.     Defendants' intentional intrusion on Plaintiff's and Class members' solitude or seclusion would be highly offensive to a reasonable person.  Plaintiff and Class members reasonably expected, based on CityMD repeated assurances, that their information would not be disclosed to or collected by any third parties, including to Advertising Defendants.

84.     The surreptitious taking and interception of sensitive data, including PII and medical information from millions of individuals was highly offensive because it violated expectations of privacy that have been established by social norms.  Privacy polls and studies show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is collected or shared.

85.     The offensiveness of this conduct is all the more apparent because Advertising Defendants' interception, storage, and use of this information was conducted inconspicuously in a manner that Plaintiff and Class members would be unable to detect and was contrary to the actual representations made by CityMD.

86.     Given the highly sensitive nature of the data that Advertising Defendants intercepted, such as private details about medications and health information, this kind of intrusion would be (and in fact is) highly offensive to a reasonable person.

87.     As a result of Advertising Defendants' actions, Plaintiff and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

88.     Plaintiff and Class members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to just compensation, including monetary damages.

89.     Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests as well as a disgorgement of profits made by Defendants as a result of its intrusions upon Plaintiff's and Class members' privacy.

90.     Plaintiff and Class members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendants' actions, directed at injuring Plaintiff and Class members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

91.     Plaintiff also seeks such other relief as the Court may deem just and proper.

### THIRD CAUSE OF ACTION

**Unjust Enrichment**

**(On behalf of Plaintiff and the Class)**

**(Against All Defendants)**

92.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

93.     Defendants received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

94.     Defendants received benefits from Plaintiff and Class members in the form of their highly valuable data, including health information and PII, that Defendants wrongfully disclosed and intercepted from Plaintiff and Class members without authorization and proper compensation.

95.     Defendants disclosed, intercepted, stored, and used this data for their own gain, providing Defendants with economic, intangible, and other benefits, including highly valuable data for analytics, advertising, and improvement of their platforms, algorithms, and advertising services.

96.     Had Plaintiff and Class members known of Defendants' misconduct, they would not have provided any of their valuable data to Defendants or have used or paid to use the CityMD website.

97.     Defendants unjustly retained these benefits at the expense of Plaintiff and Class members because Defendants' conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and Class members.

98.     The benefits that CityMD derived from Plaintiff and Class members rightly belong to Plaintiff and Class members.  It would be inequitable under unjust enrichment principles in every state for Defendants to be permitted to retain any of the profit or other benefits they derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

99.     Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendants received, and such other relief as the Court may deem just and proper.

**FOURTH CAUSE OF ACTION**

**Violation of New York General Business Law § 349**

**(On behalf of the New York Subclass)**

**(Against All Defendants)**

100.     Plaintiff re-alleges and incorporates by reference all of the preceding allegations of this Complaint with the same force and effect as if fully stated herein.

101.    Defendants are considered "businesses" under New York General Business Law 349 ("GBL § 349").

102.    Defendants' business acts and practices are unfair and deceptive under GBL § 349. New York (as well as other states through their respective unfair and deceptive trade practices statutes) has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data.  Defendants violated GBL § 349 by, among other things, disclosing and intercepting Plaintiff's and Subclass members' sensitive data without consent.

103.    CityMD further engaged in unfair business practices because it made material misrepresentations and omissions concerning the information that it assured users it would not share with third parties, which deceived and misled users of the CityMD website.

104.    Defendants' business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  The gravity of the harm of Defendants secretly disclosing, intercepting, and misusing Plaintiff's and Subclass members' sensitive and highly valuable personal data is significant, and there is no corresponding benefit resulting from such conduct.  Finally, because Plaintiff and Subclass members were completely unaware of Defendants' conduct, they could not have possibly avoided the harm.

105.    By unlawfully disclosing and intercepting this data, Defendants have taken money or property from Plaintiff and Subclass members. Plaintiff and Subclass members seek all available damages including statutory damages and reasonable costs and attorneys' fees.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the proposed Class and New York Subclass respectfully requests that the Court enter an order:

A.  Certifying the Class and the New York Subclass, and appointing Plaintiff as the Class's and New York Subclass's representative;

B.  Finding that Defendants' conduct was unlawful, as alleged herein;

C.  Awarding declaratory relief against Defendants;

D.  Awarding such injunctive and other equitable relief as the Court deems just and proper, including injunctive relief;

E.  Awarding Plaintiff, the Class members, and the New York Subclass members statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained;

F.  Awarding Plaintiff, the Class members, and the New York Subclass members pre-judgment and post-judgment interest;

G.  Awarding Plaintiff, the Class members, and the New York Subclass members reasonable attorneys' fees, costs, and expenses; and

H.  Granting such other relief as the Court deems just and proper.

## VIII.   JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

**LITE DEPALMA GREENBERG &
AFANADOR, LLC**

**DATED:** June 12, 2024

*/s/ Joseph J. DePalma*
Joseph J. DePalma
Catherine B. Derenze
570 Broad St., Ste. 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
cderenze@litedepalma.com

**STERLINGTON, PLLC**
Jennifer Czeisler*
Edward Ciolko*
Blake Hunter Yagman*
One World Trade Center, 85th Floor
New York, New York 10007
Email:  *jen.czeisler@sterlingtonlaw.com*
         *ed.ciolko@sterlingtonlaw.com*
         *blake.yagman@sterlingtonlaw.com*

*Attorneys for Plaintiff and the Proposed
Class and Subclasses*

*\*Pro Hac Vice Forthcoming*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other action, pending arbitration or administrative proceeding currently pending in any court.

I hereby certify that the following statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

|  |  |
|---|---|
|  | **LITE DEPALMA GREENBERG & AFANADOR, LLC** |
| **DATED:** June 12, 2024 | _/s/ Joseph J. DePalma_ |
|  | Joseph J. DePalma |
|  | Catherine B. Derenze |
|  | 570 Broad St., Ste. 1201 |
|  | Newark, NJ 07102 |
|  | Telephone: (973) 623-3000 |
|  | Facsimile: (973) 623-0858 |
|  | jdepalma@litedepalma.com |
|  | cderenze@litedepalma.com |

**STERLINGTON, PLLC**
Jennifer Czeisler*
Edward Ciolko*
Blake Hunter Yagman*
One World Trade Center, 85th Floor
New York, New York 10007
Email:   _jen.czeisler@sterlingtonlaw.com_
_ed.ciolko@sterlingtonlaw.com_
_blake.yagman@sterlingtonlaw.com_

_Attorneys for Plaintiff and the Proposed Class and Subclasses_

_*Pro Hac Vice Forthcoming_