## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE CITYMD DATA PRIVACY LITIGATION | **Civil Action No. 24-6972 (JXN) (CLW)**<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on Defendant Summit Health Management, LLC's d/b/a CityMD ("Summit Health" or "Defendant") motion to transfer venue to the Eastern District of New York ("E.D.N.Y.") under 18 U.S.C. 1404(a) pursuant to Federal Rule of Civil Procedure 12(b)(3). (ECF No. 69). Plaintiffs opposed the motion (ECF No. 72); and Defendant replied (ECF No. 73). This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendants' motion to transfer venue is **DENIED**.

## I.    **BACKGROUND**[1]

Plaintiffs V.A. and T.G., both New York residents, bring this class action against Summit Health, a company headquartered and incorporated in New Jersey, alleging that Defendant disclosed its patients' confidential personal identifiable information and protected health information (collectively "Private Information") collected through its website www.citymd.com

---

[1] The following factual allegations are taken from the Consolidated Class Action Complaint, which are accepted as true. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

(the "Website")[2] to unauthorized third party advertisers including Meta Platforms, Inc. ("Facebook"), Alphabet Inc. ("Google"), and LinkedIn Corporation ("LinkedIn"). (Consolidated Class Action Complaint ("CCAC") ¶¶ 4-7, 32-24, ECF No. 66).

Plaintiffs allege Summit Health discloses patients' and prospective patients' Private Information despite the Website's privacy policy which states, "[w]hen you browse [the CityMD] website, you do so anonymously . . . We do not collect personal information for the purpose of reselling or distributing that information." (CCAC ¶¶ 6, 149).[3]

The third party advertisers use this Private Information to target Website users with advertisements related to the "users' medical conditions [or] treatments sought from CityMD . . . ." (*Id.* at ¶ 7).

Plaintiffs further allege these purported privacy violations occurred and continue to occur because of tracking technologies Defendant installed on the Website, including *inter alia*: "the Meta Pixel, Google Analytics, Google DoubleClick, LinkedIn Insight Tag, and [other] related tracking tools." ("Trackers") (*Id.* at ¶ 8).[4] These Trackers "allowed unauthorized third parties to intercept the contents of patient communications, view patients' Private Information, mine that information for purposes unrelated to the provision of healthcare and further monetize it to deliver targeted advertisements to specific individuals." (*Id.* at ¶¶ 9, 102).

According to the Consolidated Class Action Complaint, "[t]he process of adding third-party Track[ers] [] to webpages is a multi-step process that must be undertaken by the website

---

[2] Additionally, Plaintiffs allege Defendant installed third-party Trackers on its mobile app. (CCAC ¶ 16).

[3] Defendant's Privacy Policy further represents that "[y]our personal information is never shared outside CityMD without your permission, except under conditions explained below" which are limited to sharing updates on new products, software updates, and when required by law. (CCAC ¶ 151). Additionally, "Defendant's Notice of Privacy Practices . . . maintains that "[u]ses and disclosures [of PHI] for marketing purposes" are to "be made only with your authorization." (*Id.* at ¶ 157).

[4] Plaintiffs also allege Defendant "installed and implemented Conversions API on its servers[,]" which "serves the same purpose" as the Trackers, however, unlike Trackers, Conversions API functions from Summit Health's servers, thus, Conversions API cannot be thwarted through the use of anti-pixel software. (CCAC ¶¶ 14-15).

owner" which were intentionally placed on the Website by Summit Health "to collect and monetize patients' data." (*Id.* at ¶¶ 12, 22) (emphasis omitted).

Plaintiffs allege Summit Health disclosed patients' Private Information despite the Department of Health and Human Services' "Standards for Privacy of Individually Identifiable Health Information" (known as the "Privacy Rule") which regulates "how healthcare provider must safeguard and protect Private Information." (*Id.* at ¶ 19). Additionally, according to Plaintiffs, "[u]nder the HIPAA Privacy Rule, no health care provider may disclose a person's personally identifiable protected health information to a third party without express written authorization." (*Id.*; *see also* ¶¶ 161-63). However, "[n]either Plaintiffs nor any other Class Members signed a written authorization permitting Defendant to send their Private Information to [third-party advertisers]." (*Id.* at ¶ 20; *see also* ¶ 158).

Additionally, Plaintiffs allege that Summit Health did not inform users of "the unauthorized disclosure of their Private Information." (*Id.* at ¶ 23).

## A.    **PROCEDURAL HISTORY**

On June 12, 2024, T.G. filed a complaint in this District against Defendant arising from these facts and claims. (ECF No. 1).

On June 14, 2024, V.A. filed a related complaint against Defendant in the Southern District of New York; on August 28, 2024, V.A. voluntarily dismissed the complaint. (*See Andretta v. Summit Health Management, LLC*, No. 24-04557 (S.D.N.Y.) (ECF Nos. 1, 16)).

On September 9, 2024, V.A. filed a new complaint in this District. (*See Andretta v. Summit Health Management, LLC*, No. 24-09039 (D.N.J.) (ECF No. 1)).

On October 2, 2024, Plaintiffs moved to consolidate their actions. (ECF No. 53). On December 17, 2024, the Court granted Plaintiffs' motion to consolidate. (ECF No. 63).

On January 17, 2025, Plaintiffs filed the Consolidated Class Action Complaint asserting nine causes of action, including: (1) a violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), *et seq.*; (2) breach of implied contract; (3) negligence; (4) breach of confidence; (5) constructive bailment; (7) violation of Section 349 of New York's General Business Law ("NY GBL") on behalf of a Nationwide Class of individuals who used CityMD.com and whose Private Information was shared with third parties through tracking technologies on CityMD.com as well as a New York subclass; (8) an invasion of privacy; and (9) unjust enrichment. (ECF No. 66).

On February 18, 2025, Defendant moved to transfer venue to the E.D.N.Y. ("Def.'s Br.") (ECF No. 69). On March 20, 2025, Plaintiffs opposed. (Pls.' Br.") (ECF No. 72). On April 4, 2025, Defendant replied. ("Def.'s Rep. Br.") (ECF No. 73). This matter is now ripe for consideration.

## II.    **LEGAL STANDARD**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "The purpose of section 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Teva Pharms. USA, Inc. v. Sandoz Inc.*, No. 17-275, 2017 WL 2269979, at *4 (D.N.J. May 23, 2017) (citing *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 525-26 (D.N.J. 2000)); *Kremer v. Lysich*, No. 18-03676, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019); *see also Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("The purpose of [section 1404(a)] is to 'prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]'") (citation omitted).

The party seeking a transfer has the burden of "establishing the need for transfer." *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir.1970), *cert. denied*, 401 U.S. 910 (1971)); *see also Eagle View Techs., Inc. v. GAF Materials, LLC*, 594 F. Supp. 3d 613, 619 (D.N.J. 2022) ("The burden to show that the balance of convenience factors and interests of justice weigh strongly in favor of transfer lies with the defendant.") (cleaned up); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993) ("[T]he burden is on the moving party to show the proposed alternate forum is not only adequate but also more convenient than the present forum.") (citation modified).

"The ultimate decision of whether to transfer a case lies within the sound discretion of the trial court." *Teva Pharms.*, 2017 WL 2269979, at *4 (internal quotations omitted); *see also Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000).[5]

"The Court must perform a two-part analysis to determine whether a transfer of venue is appropriate." *Genentech, Inc. v. Sandoz, Inc.*, No. 23-4085, 2024 WL 939692, at *3 (D.N.J. March 5, 2024) (citing *Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*, No. 22-7528, 2023 WL 1883357, at *2 (D.N.J. Feb. 10, 2023)); *see also Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) ("Section 1404 requires a two-pronged analysis."). First, the Court must analyze whether venue would be proper in the transferee district. *See Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 337 (D.N.J. 2003). Second, if venue is appropriate, the Court "should determine whether a transfer would be in the interests of justice." *Id.* (citing *Jumara*, 55 F.3d at 879). Such an analysis requires the Court to engage in an "individualized, case-by-case

---

[5] *Accord Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999) ("A determination that transfer to another jurisdiction is appropriate represents an 'exercise[] of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and the court should a particular action be litigated in one forum rather than another.'") (quoting *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993)).

consideration of convenience and fairness regarding which forum is most appropriate to consider the case." *Telebrands Corp. v. Mopnado*, No. 14-7969, 2016 WL 368166, at *10 (D.N.J. Jan. 12, 2016) (internal quotations omitted); *see also Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (That inquiry "is flexible and must be made on the unique facts of each case."). The court must ultimately determine whether "on balance" the case would proceed more conveniently, and the interest of justice be better served, in the transferee district. *Jumara*, 55 F.3d at 879.

Courts evaluating motions to transfer venue under § 1404(a) look to "the three enumerated [factors] under the statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors, including the plaintiff's choice of forum and the local interest in deciding local controversies close to home." *In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (citing *Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 62 n.6 (2013) (non-exhaustive list of factors)). The Third Circuit has identified twelve (12) factors, which are typically sorted into two categories: private interest factors, which "relate to 'the convenience of the parties and witnesses[,]'" and public interest factors, which "are not necessarily tied to the parties, but instead derive from 'the interest of justice.'" *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (citing 28 U.S.C. § 1404(a)).

The private interest factors are:

> (1) plaintiff's forum preference as manifested in the original choice;
> (2) the defendant's preference;
> (3) whether the claim arose elsewhere;
> (4) the convenience of the parties as indicated by their relative physical and financial condition;
> (5) the convenience of the witnesses— but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and
> (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara*, 55 F.3d at 879 (reformatted for clarity).

The public interest factors include:

> (1) the enforceability of the judgment;
> (2) practical considerations that could make the trial easy, expeditious, or inexpensive;
> (3) the relative administrative difficulty in the two fora resulting from court congestion;
> (4) the local interest in deciding local controversies at home;
> (5) the public policies of the fora; and
> (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (reformatted for clarity). Additionally, the Third Circuit more recently included consideration of "all other practical problems that make trial of a case easy, expeditious and inexpensive" in the balancing of private interests. *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017); *see also id.* at 402 n.7. *Accord Jumara*, 55 F.3d at 879 ("[P]ractical considerations that could make the trial easy, expeditious, or inexpensive" may also be relevant in this analysis). These factors are all weighed to determine whether, on balance, "the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *McGraw-Hill*, 909 F.3d at 57.

## III.    <u>DISCUSSION</u>

### A.    **Whether the E.D.N.Y. is a Proper Venue**

The Court first considers whether venue would be proper in the transferee district. Defendant asserts "[v]enue is appropriate in the [E.D.N.Y.] pursuant to 28 U.S.C. § 1391(b)(1)[6] because a substantial part of the events or omissions giving rise to the [C]CAC occurred in that

---

[6] The Court notes that Defendant does not cite to the proper subsection of section 1391. Section 1391(b)(1) states a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" 28 U.S.C. § 1391(b)(1). Section 1391(b)(2) proscribes venue to be proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2).

district—for example, T.G. alleges that she looked for CityMD locations close to her home." (Def.'s Br. at 6 (citing CCAC ¶ 231)). However, Plaintiffs allege Defendant disclosed their and other patients' Personal Information through Summit Health's installation and utilization of third-party trackers on its Website and mobile app, which Plaintiffs allege occurred and is operated at Summit Health's headquarters in New Jersey. (*See, e.g.*, CCAC ¶¶ 6-16, 50, 63, 67, 101, 146-160). T.G.'s use of the Website for various medical symptoms as well as to find locations near her home is incidental to the locus of the action—the place where Defendant's Website is allegedly maintained and the decisions related to the installation of Trackers occurred—which is Summit Health's headquarters in New Jersey.[7]

Next Defendant asserts venue is proper in the E.D.N.Y. under § 1391(c)(2)[8] because the E.D.N.Y. has personal jurisdiction over Summit Health since they provide "management services" to CityMD, which has several New York locations, thus, "Summit [Health] conducts business in the [E.D.N.Y.]" (Def.'s Br. at 6 (citing (Declaration of Chris Sclafani ("Sclafani Decl.")[9] ¶¶ 2-3, ECF No. 69-3)).[10]

---

[7] Regarding Defendant's Section 1391(b)(2) argument, the Court notes that "the Second Circuit 'caution[s] district courts to take seriously the adjective 'substantial' because courts 'are required to construe the venue statute strictly.'" *Chen v. Wang*, --- F. Supp. 3d ----, No. 25-2163, 2025 WL 2170300, at *1 (E.D.N.Y. July 31, 2025) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). "[F]or venue to be proper, significant events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Id.* (quoting *Glasbrenner*, 417 F.3d at 357) (emphasis in original). Here, Defendant argues Plaintiff T.G. looked for CityMD locations close to her home in New York. Under New York jurisprudence, this could be deemed a "material event." However, mindful of the Second Circuit's emphasis of "substantial" in construing the venue statute, the installation and configuration of Trackers on the Website is a more significant "material" event given Plaintiffs' allegations. Thus, construing Defendant's 1391(b)(2) argument in the context of precedent from its chosen forum, the Second Circuit's guidance further supports the Court's determination.

[8] The proper basis for Defendant's personal jurisdiction argument is section 1391(b)(3), which proscribes that "if there is no district in which an action may otherwise be brought as provided in [(b)(1) or (b)(2)] then venue may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action[,]" rather than section 1391(c)(2), which discusses residency for venue purposes. *Compare* 28 U.S.C. § 1391(b)(3), *with* 28 U.S.C. § 1391(c)(2).

[9] In considering whether to transfer a case, the Court may consider "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973).

[10] The Court notes that a determination of whether the E.D.N.Y. has personal jurisdiction over Defendant is distinct from determining venue. *See Eason v. Linden Avionics, Inc.*, 706 F. Supp. 311, 319 (D.N.J. 1989) ("Personal

The parties do not substantially address whether the E.D.N.Y. would have personal jurisdiction over Defendant. (See Def.'s Br. at 6 ("By providing management services to CityMD, Summit conducts business in the [E.D.N.Y.] . . . As such, the [E.D.N.Y.] has personal jurisdiction over Summit."); Pls.' Br. at 5 ("Indeed, given Defendant's assertions that it only provides "management services" to CityMD clinics, it is far from clear that the [E.D.N.Y.] can exercise personal jurisdiction over Summit.")). Nor does Defendant's declaration offer significant factual background for the Court to make a proper determination. (*See generally* Sclafani Decl.). *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 586 (D.N.J. 2001) ("The movant must demonstrate "the propriety of venue in the transferee district and jurisdiction over all of the defendants.").

Notably, Defendant "does not operate any CityMD clinics and does not do business as CityMD." (Sclafani Decl., at ¶¶ 2-3). Thus, whether the E.D.N.Y. would have personal jurisdiction requires additional information regarding the depth and breadth of Defendant's providing of "management services" to CityMD, (Sclafani Decl., at ¶ 2), to determine whether Defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *International Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).[11]

---

jurisdiction and venue, although closely related issues which determine where a suit will be adjudicated, require separate consideration."); *see also Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 419 (E.D. Pa. 2005) ("[A] court has the power to transfer a case pursuant to venue transfer statutes without possessing personal jurisdiction over the defendants.") (citation omitted).

[11] Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant. *Goodyear*, 564 U.S. at 919; *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). Here, the E.D.N.Y. would likely lack general jurisdiction over Summit Health. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.") (citation modified); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) ("'Principal place of business' refers to the place where a corporation's officers direct, control, and coordinate the corporation's activities."). Thus, the inquiry is confined to whether specific jurisdiction exists in the E.D.N.Y. over Defendant.

Accordingly, for purposes of this motion, the Court presumes, without deciding, that the E.D.N.Y. would be a proper venue.

### B. The Transfer Factors

As noted, the second step is "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879. The Court addresses each of the factors in turn.

### i.  <u>Private Interest Factors</u>

### (1) Plaintiff's Forum Choice

The first factor weighs against transfer. "In the Third Circuit, a plaintiff's choice of forum is a 'paramount concern' in deciding a motion to transfer venue." *Wm. H. McGee & Co., Inc. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 289 (D.N.J. 1997); *see also Def. Distributed v. Platkin*, 617 F. Supp. 3d 213, 233 (D.N.J. 2022) ("A plaintiff's choice of forum is a paramount consideration in any determination of a transfer request . . . which should not be lightly disturbed.") (citation modified); *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227 (D.N.J. 1996) (Courts generally "assign the plaintiff's choice of forum significant weight.") (citation omitted).

However, in certain circumstances, a plaintiff's choice of forum is accorded less weight. *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 521 (D.N.J. 1998). The deference may be reduced, for example, "where the choice of forum by a plaintiff has little connection with the operative facts of the lawsuit," or where the plaintiff has engaged in forum shopping. *Id.*; *see, e.g., Yang v. Odom*, 409 F. Supp. 2d 599, 606 (D.N.J. 2006) (giving plaintiffs' forum preference less weight because

---

"Specific" or "case-linked" jurisdiction depends on an affiliation between the forum state and the defendant's "suit-related conduct." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Importantly, specific jurisdiction analysis "looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *See Walden*, 571 U.S. at 285. Accordingly, determining whether there is a proper basis to exercise specific jurisdiction over Defendant would depend on Defendant's contacts with New York.

they "only pursued their case [in this District] after their options in Georgia effectively ran out"). *Accord Culp v. NFL Prods. LLC*, No. 13-7815, 2014 WL 4828189, at *4 (D.N.J. Sept. 29, 2014) (A plaintiff's choice of forum is given little weight if "the choice of forum has little connection with the operative facts."); *Garlick v. Quest Diagnostics Inc.*, No. 06-6244, 2010 WL 1490923, at *2 (D.N.J. Apr. 13, 2010) ("A plaintiff's choice of forum, while ordinarily entitled to some deference, is entitled to less deference, perhaps to the vanishing point, when the plaintiff chooses a foreign forum with no apparent connection to the operative facts of the lawsuit."). Additionally, "a plaintiff's choice of forum is accorded less weight when the selected forum is not the plaintiff's home forum." *Acosta v. Costa*, 2024 WL 1117585, at *2 (D.N.J. Mar. 14, 2024) (citing *LG Elecs. Inc.*, 138 F. Supp. 2d at 589); *cf. Wm. H. McGee*, 6 F. Supp. 2d at 289 ("The choice is 'entitled to greater deference'" where "a plaintiff chooses its home forum." (quoting *Ricoh Co.*, 817 F. Supp. 473, 480 (D.N.J. 1993)).

Here, Plaintiffs are New York residents, and this is a class action, which entitles their forum choice to less weight. *See, e.g., LG Elecs.* 138 F. Supp. 2d at 589 ("Plaintiff's choice is accorded less weight when the chosen forum is not the plaintiff's home forum."); *Huang v. Sonus Networks, Inc.*, No. 15-2407, 2016 WL 1090436, at *2 (D.N.J. Mar. 21, 2016); *Santomenno v. Transamerica Life Ins. Co.*, No. 11-736, 2012 WL 1113615, at *5 (D.N.J. Mar. 30, 2012) (noting courts have afforded less weight to plaintiff's forum choice for two reasons: (1) participation of the class representative is minimal and (2) potential class members are throughout the United States); *Johnson v. Nextel Commc'ns, Inc.*, No. 06-5547, 2007 WL 2814649, at *4 (D.N.J. Sept. 21, 2007) ("Lastly, this is [a] putative class action and 'where there are many potential plaintiffs scattered across the country, the choice of this plaintiff deserves less weight.'") (citation omitted); *Impervious Paint Indus., Ltd. v. Ashland Oil, Inc.*, 444 F. Supp. 465, 467 (E.D. Pa. 1978) ("[W]here

there are many potential plaintiffs scattered across the country, the choice of this plaintiff deserves less weight."). *Accord Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (determining in a derivative class action that "where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened").

However, the operative facts of the Consolidated Class Action Complaint center around Summit Health's disclosure of patients' Personal Information through Summit Health's installation and utilization of third-party trackers on its Website and mobile app, which occurred and is operated at Summit Health's headquarters in New Jersey. (*See, e.g.,* CCAC ¶¶ 6-16, 50, 63, 67, 101, 146-160). *See Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, 08-2158, 2008 WL 4755350, at *7 (D.N.J. Oct. 29, 2008) ("Defendants' preference for a California forum does not outweigh Gourmet's preference for a New Jersey forum because New Jersey is Gourmet's home forum and has some connection to the factual basis for the action.") (citing *Danka Funding, LLC v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 475 (D.N.J. 1998)).

Indeed, Summit Health neither operates any CityMD clinics nor does business as CityMD. (Sclafani Decl., ¶ 2). This fact underscores that it is not the physical CityMD locations but rather Summit Health's Website and implementation of Trackers, that is central to Plaintiffs' allegations.

**(2) Defendant's Forum Preference**

Defendant's forum preference is neutral. *See Stewart v. First Student, Inc.*, 639 F. Supp. 3d 492, 499 (E.D. Pa. 2022) (Defendant's "preference is entitled to considerably less weight than [a] [p]laintiff's.") (quoting *EVCO Tech. & Dev. Co. v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005)).

**(3) Whether the Claims Arose Elsewhere**

The third factor weighs against transfer. "[T]he most important private interest to consider is the third one—whether the claim arose elsewhere." *Acosta*, 2024 WL 1117585, at *2 (citing *Perilstein v. Deloitte & Touche LLP*, No. 22-1871, 2022 WL 3101970, at *2 (D.N.J. Aug. 4, 2022)); *see also Santomenno*, 2012 WL 1113615, at *7 ("Some courts in this District have considered this factor to be the 'most critical to the Court's analysis.'") (first quoting *Travelodge Hotels*, 2011 WL 5869602, at *5; then citing *Days Inns Worldwide, Inc. v. Ram Lodging, LLC*, No. 09-2275, 2010 WL 1540926, at *6 (D.N.J. April 14, 2010)).

"The third private factor . . . may be best understood as a consideration of which forum constitutes the 'center of gravity' of the dispute, its events, and transactions." *Travelodge Hotels, Inc. v. Perry Developers, Inc.*, No. 11-1464, 2011 WL 5869602, at *5 (D.N.J. Nov. 22, 2011) (citing *Park Int'l, LLC v. Mody Enters.*, 105 F. Supp. 2d 370, 377-78 (D.N.J. 2000)). "The center of gravity analysis is a fact sensitive inquiry that seeks to identify the forum in which the operative facts giving rise to the litigation occurred." *Id.* (quoting *Travelodge Hotels*, 2011 WL 5869602, at *5).

The core of Plaintiffs' claims centers around Defendant's operation of the Website. Defendant's practice of installing and configuring these Trackers originated from its New Jersey headquarters, thus, New Jersey "can be considered the place where events giving rise to the claim occurred." *Cf. Popa v. PSP Group, LLC*, No. 22-1357, 2023 WL 2243079, at * (W.D. Pa. Feb. 27, 2023) (transferring venue to the Western District of Washington where plaintiff alleged that defendant, who owned and operated "Session Replay Code" called "Clarity" allegedly used session replay code "to unlawfully record, track, and analyze the actions taken by visitors to its website, www.petsuppliesplus.com" and noting that while the third factor "might seem to favor [plaintiff]," as her communications were intercepted by [defendant] through Clarity when she

accessed [defendant's] website in Pennsylvania . . . *in the context of this case, the location of the intercept is ultimately less important than the software that did the intercepting.* That software is [] located . . . in the Western District of Washington.") (emphasis added); *Dermansky v. Young Turks, Inc.,* No. 22-345, 2023 WL 4351340, at *3 (D. Del. July 5, 2023) (finding third factor favored transfer to Central District of California where plaintiff alleged defendant infringed plaintiff's photographs which were embedded in defendant's videos and posted on defendant's YouTube channel because (1) "the record shows that [d]efendant created the allegedly infringing videos in California, and that Defendant operates and maintains its servers out of central California[]"; and (2) "the allegedly infringing videos are hosted on YouTube, which is based out of San Bruno, California . . . Thus, based on the present record, there is no evidence that any of the underlying events supporting [p]laintiff's claims occurred in Delaware. Rather, the publications at issue giving rise to [p]laintiff's copyright claims took place in California."). *Accord NPR, Inc. v. Am. Intern. Ins. Co. of Puerto Rico,* No. 00-0242, 2001 WL 294077, at *4 (D.N.J. Mar. 28, 2001) ("While [p]laintiff undoubtedly felt the impact of lowered profitability as a result of [[d]efendant] in New Jersey, this is merely the underlying factual basis which led to [p]laintiff's insurance claim. It is the breach of the [p]olicy, not the underlying damages allegedly suffered, which must be considered in determining where the center of gravity of this litigation is. The wrong allegedly committed by [d]efendant, namely [the] breach of contract, occurred at [d]efendant's San Juan office, when [d]efendant allegedly refused to live up to its contractual obligations."); *New York Mercantile Exch. v. Central Tours Int'l, Inc.,* No. 96-8988, 1997 WL 370600, at *4 (S.D.N.Y. July 1, 1997) ("The place where the harm occurred is . . . relevant for venue purposes.").

**(4) Convenience of the Parties**

The fourth factor is neutral. In evaluating this factor, courts "look to [the] relative physical and financial condition of the parties." *Koeller v. Pilot Travel Ctrs., LLC*, No. 22-2270, 2023 WL 3250512, at *4 (D.N.J. May 4, 2023) (finding factor neutral because although "it would be more convenient to litigate in their home state" plaintiffs provided "no specific inconvenience . . . that would preclude them from litigating in [the transferee state]") (alteration in the original); *Denmark v. Pilot Travel Ctrs., LLC*, No. 18-15028, 2019 WL 2353644, at *5 (D.N.J. June 4, 2019) (finding factor neutral because plaintiffs "do not represent that they are financially incapable of incurring any potential cost increase or that they are physically incapable of traveling to [the transferee state]").

Although both Plaintiffs reside in New York, they expressed a clear desire to litigate in New Jersey by filing their individual cases prior to consolidation in this District. Additionally, the parties can access either forum with ease. Moreover, Defendant does not provide any physical or financial considerations why transfer to the E.D.N.Y. is necessary. *See Howard v. Excel, Inc.*, No. 24-193, 2024 WL 1328135, at *3 (D.N.J. March 28, 2024) (finding fourth factor neutral where there are no representations on how the parties are "financially incapable of incurring any potential costs associated with litigating the matter in th[is] district, or that they are physically incapable of traveling to [this district]"); *Danka Funding*, 21 F.Supp.2d at 475 (noting that defendant failed to produce evidence of its physical or financial inability to litigate in the forum state and denying defendant's motion to transfer venue).[12]

---

[12] Additionally, the Court notes that "[a]s the Supreme Court has explained, '[i]n most instances, the purpose of statutorily specified venue' like § 1404(a) 'is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial.'" *Chen*, 2025 WL 2170300, at *6 (quoting *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 63 n.7, (2013)) (emphasis in original). Here, Plaintiffs have chosen the forum in which Defendant is incorporated and headquartered.

Defendant is incorporated and headquartered in New Jersey; thus, it should reasonably anticipate litigation in that forum. *See Eagle Pharms., Inc. v. Eli Lilly & Co.*, No. 17-6415, 2018 WL 3492145, at *7 (D.N.J. July 20, 2018) (stating that plaintiff who is incorporated in Delaware "must anticipate litigating there.").

### (5) Convenience of the Witnesses

The fifth factor is also neutral. The convenience of witnesses is only a consideration "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879, *but see Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 199 (E.D. Pa. 2008) (The convenience of witnesses "is a particularly significant factor in a court's decision whether to transfer."). Additionally, witnesses who are employees of a defendant are presumed to be willing to testify in either forum despite inconvenience. *See, e.g., Atanassov v. Amspec Servs., LLC*, No. 15-3628, 2016 WL 740269, at *5 (D.N.J. Feb. 24, 2016) ("[T]he convenience of witnesses [who] are employees of a party carries no weight because the parties are obligated to procure their attendance at trial.") (citation omitted) (alteration in the original).

Defendant asserts that its employees are in other locations besides New Jersey and that the non-New Jersey employees would find New York more accessible. (Sclafani Decl., ¶ 4). However, such an averment without more is insufficient to establish Defendant's burden of showing convenience of the witnesses "strongly favors transfer." *See Sandvik, Inc. v. Cont'l Ins. Co.*, 724 F. Supp. 303, 304 (D.N.J. 1989); *see also Plum Tree*, 488 F.2d at 757 n.2 (noting that "a list of the names and addresses of witnesses whom the moving party plans to call and affidavits showing the materiality of the matter to which these witnesses will testify" would help to establish inconvenience); *Formula One Licensing BV v. Valentine*, No. 14-5812, 2016 WL 7175591, at *10 (D.N.J. Dec. 28, 2016) ("Defendants have not provided any evidence that there are witnesses who

will refuse to testify or consequently be unavailable in New Jersey. "); *id.* at *10 ("[W]ithout more specific allegations as to how these witnesses are unavailable in New Jersey, [d]efendants' argument that some witnesses and evidence are located in Massachusetts is alone insufficient to establish inconvenience or unavailability.") (citing *Monarch Envt'l, Inc. v. Velocitor Solutions*, No. 11-03041, 2011 WL 4499270, at *4 (D.N.J. Sept. 27, 2011) ("merely citing witnesses' residences and offices, without more does not establish inconvenience of unavailability.")). Moreover, discovery has not occurred yet and the parties have not identified witnesses who would testify at trial.[13] As such, there is no indication that any witnesses may be unavailable for trial in either forum.

### (6) Location of the Books and Records

The sixth factor is neutral. "The technological advances of recent years have significantly reduced the weight of [this factor] in the balance of convenience analysis." *Atanassov*, 2016 WL 740269, at *5 (quoting *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003)). However, "[w]hile advances in technology may alter the weight given to [this factor], it is improper to ignore [this factor] entirely." *Heron Therapeutics, Inc. v. Slayback Pharma LLC*, No. 24-423, 2024 WL 3272825, at *5 (D.N.J. July 2, 2024) (quoting *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011)).

Here, most documents are likely accessible electronically. (Sclafani Decl., ¶ 5 ("Summit [Health] electronically stores most of its files.")). *See Tennaro-Messina v. Marriott Int'l Inc.*, No. 23-20852, 2024 WL 3064895, at *4 (D.N.J. June 20, 2024) (finding factor neutral despite presence of incident report in Florida because documents can be transferred electronically). To the extent

---

[13] Plaintiffs note that the office of Defendant's Senior Vice President of Corporate Compliance and Privacy is located in New Jersey and asserts that because the controversy focuses on alleged violations of Plaintiffs' HIPAA and privacy, such a compliance employee would be "a critical witness." (Pls.' Br. at 12, 12 n.4). However, Defendant states that employee is no longer employed by Summit Health. (Def.'s Rep. Br. at 10, 10 n.3).

there are any other relevant documents, they are likely located in New Jersey at Summit Health's headquarters. *Heron Therapeutics*, 2024 WL 3272825, at \*5 ("[A]ny other relevant documents are likely in Massachusetts, where the new parent corporation is located.").

In sum, the private interest factors, particularly one and three, weigh against transfer to the E.D.N.Y.

### ii.    Public Interest Factors

#### (1) Enforceability of the Judgment

The first factor is neutral because Plaintiff is unlikely to encounter difficulty enforcing any judgment against Defendants, whether in New York or New Jersey.[14]

#### (2) Practical Considerations[15]

The second factor weighs against transfer. "This factor focuses on whether transfer would promote judicial economy." *Genentech*, 2024 WL 939692, at \*7 (citations omitted); *see also Atanassov*, 2016 WL 740269, at \*6 ("[P]ractical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive.") (citation modified); *Jumara*, 55 F.3d at 879 (same); *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent.").

The allegations arise from the installation and configuration of Trackers on Defendant's Website and mobile app which Plaintiffs contend was intentionally installed by Defendant who is

---

[14] *See* 28 U.S.C. § 1963 (registration of judgment in federal district court "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner").

[15] Defendant asserts that it is more practical to have a New York trial and that the only relevant parties for whom litigating in New Jersey is more convenient is Plaintiff T.G.'s counsel who are located in Newark, New Jersey. (Def.'s Br. at 9, 9 n.3). However, as Defendant correctly notes, the Court does not consider counsel's preference. *LG Elecs.*, 138 F. Supp. 2d at 591 n.12 ("[T]he convenience of counsel is not a factor that should be considered on a motion to transfer venue.") (citation modified).

located in New Jersey. Additionally, two cases are already venued here.[16] *Acosta*, 2024 WL 1117585, at *3.

### (3) Administrative Considerations

The third factor is neutral. Both courts would be able to accommodate a trial.

### (4) Local Interest in Deciding Controversies at Home

The fourth factor weighs against transfer. This factor asks, "which of the two potential districts maintains a greater interest in the action." *Coppola*, 250 F.R.D. at 200. Typically, the district in which "a substantial amount of the alleged culpable conduct occurred . . . favors retaining jurisdiction as a matter of local interest." *Id.* at 201. Both New York and New Jersey have a strong interest in the privacy of its residents. However, importantly, Summit Health is headquartered in New Jersey, and the controversy arises from Summit Health's Website, which Defendant

---

[16] The parties discuss the applicability of the first-to-file rule. (Pls.' Br. at 13-14; Def.'s Rep. Br. at 9-10). The first-to-file rule derives from the principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Muhammad v. State Farm Indem. Co.*, 719 F. Supp. 3d 397, 400 (D.N.J. 2024) (quoting *Smith v. McIver*, 22 U.S. 532, 535 (1824)); *id.* at 401 (The "first-filed rule is typically applied to determine which case gets priority as between cases pending in two lower federal courts."); *see also Malhotra v. Bhavana Atti Janakiram*, No. 23-21599, 2024 WL 3616938, at *2 (D.N.J. Aug. 1, 2024) (The first-to-file rule is "a comity-based rule that states when two substantially similar lawsuits are filed in different federal district courts with jurisdiction, there is a presumption that the court in which the case was filed first should hear both lawsuits except in special circumstance[s].") (quoting *MLI RX, LLC v. GlaxoSmithKline LLC*, No. 23-429, 2023 WL 3739064, at *3 (E.D. Pa. May 30, 2023)). The first-filed rule "ordinarily counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts." *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 205 (3d Cir. 2012) (citing *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)). Even where these factors are present, the Court has discretion to apply or decline to apply the rule. *See E.E.O.C.*, 850 F.2d at 976-77. "Recognized exceptions to the rule include (1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5) where the second-filed action has developed further than the initial suit; and (6) 'when the first filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum.'" *Malhora*, 2024 WL 3616938, at *2 (quoting *E.E.O.C.*, 850 F.2d at 972, 976). Here, the first-to-file rule further weighs against transfer. On October 31, 2024, another New York plaintiff, Sofiya Anisimova, brought an action *Anisimova v. Village Practice Management Company LLC d/b/a/ CityMD*, No. 24-7615 in the E.D.N.Y. ("Anisimova action") alleging analogous claims to Plaintiffs. (*See* Declaration of Mayling C. Blanco ("Blanco Decl.") ¶ 4, Ex. B, ECF No. 69-4). Defendant states that the Anisimova action is at its "inception" and notes that the Anisimova action has been stayed pending this Court's determination on Defendant's instant motion. (Def.'s Rep. Br. at 10 (citing Blanco Decl., Exs. A and B, ECF Nos. 73-2, 73-3)). Since the Anisimova action was filed after Plaintiffs' individual actions and while the motion to consolidate Plaintiffs' present joint action was pending, the first-to-file rule counsels deference to Plaintiffs action, whereas here, the same issues and Defendant are present. *Honeywell Int'l*, 502 F. App'x at 205. Additionally, the Court does not find any of the enumerated exceptions to the rule applicable.

maintains, thus, the alleged conduct occurred here. Moreover, New Jersey has "a compelling interest in adjudicating this controversy and regulating the conduct of its corporations[.]" *Metro. Life Ins. Co. v. Bank One, N.A.*, Nos. 03-1882, 03-2784, 2012 WL 4464026, at *8 (D.N.J. Sept. 25, 2012).

### (5) Public Policies of the Fora

The fifth factor minimally weighs against transfer. This District has a substantial interest in this matter because Summit Health is headquartered here and multiple CityMD locations exist in New Jersey, thus numerous New Jersey residents are potentially implicated in Plaintiffs' allegations. While New York also has an interest, and numerous CityMD locations are located in New York, as stated *supra*, it is not the physical CityMD locations that give rise to this action, but rather the installation of Trackers on the Website, which alleged occurred and is maintained in New Jersey.[17]

### (6) The Court's Familiarity with the Applicable Law

The sixth factor is neutral. This factor is "accorded little weight . . . because federal courts are deemed capable of applying the law of other states." *Reed v. JTH Tax, Inc.*, No. 07-1804, 2007 WL 2416445, at *6 (D.N.J. Aug. 21, 2007) (citation omitted); *see also Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008) (stating that federal judges are "regularly called upon to interpret the laws of jurisdictions outside of the state[] in which they sit.").

---

[17] Defendant contends that Plaintiffs' assertion that decisions related to, and configuration of the Website occurred in New Jersey are merely "speculation," notes that Summit Health only merged with CityMD in 2019, and that the CityMD website existed prior to the merger, thus, "the website decision-making likely occurred before Summit [Health] was affiliated with CityMD." (Def.'s Rep. Br. at 11). As Defendant notes, it is unclear prior to discovery when and where these decisions occurred. (*Id.*). Thus, at this juncture, the Court accepts Plaintiffs' allegations as true. Additionally, the Court reiterates the burden on a motion to transfer is on Defendant. *Jumara*, 55 F.3d at 879; *see also Eagle View Techs.*, 594 F. Supp. 3d at 619. Defendant did not present evidence or aver in a declaration any information to rebut Plaintiffs' assertion.

Moreover, the Third Circuit and this District consistently adjudicate alleged violations of NY GBL Section 349. *See, e.g.*, *Abramowitz v. Tropicana Atl. City Corp.*, 750 F. App'x 109, 113-14 (3d Cir. 2018) (appeal from summary judgment affirmed); *Grandalski v. Quest Diagnostics, Inc.*, 767 F.3d 175, 186-87 (3d Cir. 2014) (same); *Johnson & Johnson Health Care Sys. Inc. v. Save on SP, LLC*, No. 22-2632, 2023 WL 415092, at *6-7 (D.N.J. Jan. 25, 2023); *In re Subaru Battery Drain Prod. Liab. Litig.*, No. 20-03095, 2021 WL 1207791, at *23 (D.N.J. Mar. 31, 2021).

On balance, several private and public factors militate against transfer to the E.D.N.Y.

## IV.    **CONCLUSION**

For the reasons set forth above, Defendants' motion to transfer venue is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: August 29, 2025

JULIEN XAVIER NEALS
United States District Judge